UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO: 4:22-CV-00146-JHM**

**CADRELL MCREYNOLDS**                                                                                         **PLAINTIFF**

**V.**

**AHLSTROM-MUNKSJÖ FILTRATION, LLC**
**and PEOPLE PLUS, INC.**                                                 **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant People Plus, Inc.'s Motion for Judgment on the Pleadings. [DN 16]. Fully briefed, this matter is ripe for decision. For the following reasons, People Plus's Motion is **DENIED**.

**I. BACKGROUND**

The facts that follow are presented, as they must be at this stage, in the light most favorable to the plaintiff. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Plaintiff Cadrell McReynolds ("Mr. McReynolds"), a Black man, wished to work for Defendant Ahlstrom-Munksjö Filtration, LLC ("Ahlstrom"), a filter-paper manufacturer in Madisonville, Kentucky. [DN 1 at ¶¶ 4, 11, 15]. To do so, he applied to work for Defendant People Plus, Inc. ("People Plus"), a staffing agency that performs screening and placement for Ahlstrom; anyone who wants to work at Ahlstrom must first be employed by People Plus. [*Id.* at ¶¶ 10, 12]. People Plus accepted Mr. McReynolds and placed him with Ahlstrom in October 2021. [*Id.* at ¶ 12].

Mr. McReynolds worked for Ahlstrom as a material handler. [*Id.* at ¶ 17]. The first thing his new employer assigned him to do was bale paper. [*Id.*]. Baling paper is arduous manual labor and is generally considered the worst assignment one can get at Ahlstrom. [*Id.*]. Mr. McReynolds

did not mind it at first, as he naturally expected that the newest employees would receive the worst jobs. [*Id.* at ¶ 18]. But months went by, and Mr. McReynolds's assignments did not improve. He told his supervisor that he wanted to do other jobs and was willing to do the training required for those jobs. [*Id.* at ¶ 23]. But every time he inquired about undergoing that training, his supervisor sent him back to baling paper. [*Id.*]. Meanwhile, Mr. McReynolds's White coworkers did not endure the same struggles. They progressed to doing better jobs while Mr. McReynolds was still stuck baling paper, even ones that started working at Ahlstrom after Mr. McReynolds did. [*Id.* at ¶ 19].

At one point, Mr. McReynolds was temporarily assigned to a different shift, where he had the opportunity to do jobs that he did not get to do on his normal shift. [*Id.* at ¶ 20]. Seeking to capitalize on the opportunity, Mr. McReynolds came in on his day off to do training for that shift. [*Id.*]. Evidently, however, Mr. McReynolds left the facility before the shift was over without letting the supervisor know. When he next arrived at work for his normal shift, his supervisor criticized him for leaving early without permission, even though Mr. McReynolds was not obligated to have been at work that day in the first place. [*Id.* at ¶ 21]. By the next week, Ahlstrom had hired a new, White employee for Mr. McReynolds's shift. [*Id.* at ¶ 22]. This employee was never required to do baling work, which remained Mr. McReynolds's primary assignment. [*Id.*].

Another dispute occurred on December 18, 2021. That night, Mr. McReynolds arrived for his shift early and immediately informed his supervisor that he had to leave at midnight, earlier than workers usually left. [*Id.* at ¶ 24]. When midnight came, the supervisor had already gone, so Mr. McReynolds instead notified the operator that he was leaving. [*Id.* at ¶ 25]. But despite his efforts to ensure that his superiors knew he was leaving early, the next time he came to work, his supervisor berated him for leaving that shift early without permission. [*Id.*]. About two weeks

later, after Mr. McReynolds was out the country on a pre-approved mission trip, Ahlstrom reached out to People Plus and asked it to stop sending Mr. McReynolds to work there, citing as its reason the two shifts Mr. McReynolds's left early. [*Id.* at ¶¶ 26–29]. When People Plus informed Mr. McReynolds of Ahlstrom's decision, he detailed the disparate and racially discriminatory treatment he received while at Ahlstrom. [*Id.* at ¶ 30]. He says People Plus did not investigate his claims. [*Id.*].

After going through the Equal Employment Opportunity Commission (EEOC) administrative process and receiving a right to sue from the agency, Mr. McReynolds's sued both Ahlstrom and People Plus in this Court, claiming racial discrimination under both the United States and Kentucky Civil Rights Acts. [DN 1]. People Plus answered, attaching numerous documents from the EEOC proceedings that it thinks defeat Mr. McReynolds's claims. [DN 7].

## II. STANDARD OF REVIEW

Pursuant to Rule 12(c), any party may move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay the trial." FED. R. CIV. P. 12(c). The Court applies the same standard in deciding motions for judgment on the pleadings as it does when deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted). A motion for judgment on the pleadings

should be granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* at 582.

If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6) or Rule 12(c), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). But this rule does not require the Court to convert a motion to dismiss into a motion for summary judgment every time the Court reviews documents that are not attached to the complaint. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). The term "pleadings" includes both the complaint and the answer, FED. R. CIV. P. 7(a), and "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." FED. R. CIV. P. 10(c); *see Benzon v. Morgan Stanley Distribs.*, 420 F.3d 598, 603 (6th Cir. 2005). And "when a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Greenberg*, 177 F.3d at 514 (internal quotation marks omitted).

### III. DISCUSSION

At the outset, the Court must note that it cannot—without converting this Motion into one for summary judgment—consider the documents from the EEOC proceedings that People Plus attached to its Answer as "Exhibit 2," which it claims "contradict"[1] Mr. McReynolds's allegations.

---

[1] Even if the Court could consider those materials, they would not entitle People Plus to judgment because they do not contradict Mr. McReynolds's claims. A document contradicts a claim when, say, the plaintiff's complaint says the document says one thing, but it in fact says something else entirely. *Cf. Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322–23 (6th Cir. 2002) (affirming breach-of-contract claim's dismissal because official rules and explanatory letter attached via Rule 10(c) plainly showed that plaintiff did not win grand prize). But that is not the case here. At best, People Plus's exhibits *dispute* Mr. McReynolds's version of events, and because this is the pleading stage, the Court must assume that Mr. McReynolds's version is true. And it is not even clear how the exhibits dispute the Complaint. For instance, Mr. McReynolds's text message says he left work early but had permission and/or valid reasons to do so. [DN 7-2 at 42–44]. He tells largely the same story in his Complaint. [DN 1 at ¶¶ 20–21, 24–25].

4

[*See* DN 7-2]. None of those documents are integral to Mr. McReynolds's Complaint. *See Greenberg*, 177 F.3d at 514. He attached his EEOC charge of discrimination and right-to-sue notice to the Complaint because he was legally required to do so, not because his claims are based on those documents. *Thomas v. Centerplate Inc.*, No. 3:14CV–700–H, 2014 WL 6606623, at *3 (W.D. Ky. Nov. 19, 2014). His clerical attachment does not entitle People Plus to submit the entire record from the EEOC proceedings. *See* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (4th ed. 2008) (specifying that Rule 10(c) allows defendant to attach documents when the plaintiff's claim is *based* on them). Mr. McReynolds was able to state a claim for relief without making any reference to the emails and text messages People Plus heavily relies upon, so they cannot be central to his claim. They certainly appear central to People Plus's *defense*, and they may prove helpful to it on a motion for summary judgment, but it would only be appropriate for the Court to consider such defensive evidence after both parties have had an opportunity for full discovery. *See Miller v. Mylan, Inc.*, 741 F.3d 674, 679 (6th Cir. 2014) (Gibbons, J., concurring) (joining reversal of complaint's dismissal because document that defendant submitted and district court relied upon was "in no way referenced in the complaint, and it is not central to *plaintiff's* claim. If anything, it seems central to the defense.").

      People Plus also asserts that the documents in Exhibit 2 are admissible at this stage because they are "written instruments" under Rule 10(c). But other courts in this circuit have held that not every written thing is a written instrument. "A 'written instrument' within the meaning of Rule 10(c) is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement." *Cote v. NewRez, LLC*, No. 1:18-cv-00052, 2021 WL 1840563, at *3 (M.D. Tenn. May 7, 2021) (quoting *Steverson v. Walmart*, No. 3:19-cv-00140, 2019 WL 3822179, at *2 (M.D. Tenn. Aug. 15, 2019)).

The emails, text messages, and time sheet that People Plus relies upon are not written instruments under this definition.[2] They do not evidence binding legal rights or duties; they evidence the events that gave rise to this case. [*See* DN 7-2]. While People Plus points out there is no Sixth Circuit precedent on what a "written instrument" is, at least one other circuit and a premier legal dictionary use the same definition as our fellow district courts. *See Smith v. Hogan*, 794 F.3d 249, 254 (6th Cir. 2015); *Instrument*, BLACK'S LAW DICTIONARY (5th pocket ed. 2016) ("A written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate."). This Court will use that definition, as well.

At the pleading stage, courts "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens*, 500 F.3d at 527 (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff satisfies this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In an employment-discrimination case, the plaintiff need not establish a *prima facie* case of discrimination in his complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002); *Keys v. Humana, Inc.*, 684 F.3d 605, 608–09 (6th Cir. 2012). As long as the complaint contains "direct or inferential allegations respecting all the material elements under some viable legal theory," the plaintiff has stated a plausible claim for relief. *Hester v. United Healthcare Ins. Co.,* No. 1:08-cv-105, 2009 WL 128303, at *7 (E.D. Tenn. Jan. 16, 2009) (citing *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 336–337 (6th Cir. 2007)). And alleging that a staffing firm "knew or should have known about the client's discrimination" against the plaintiff "and failed to take

---

[2] People Plus's other exhibits, [*see* DN 7-1, DN 7-3], are arguably written instruments under the prevailing definition, but there is nothing in those documents that would entitle People Plus to judgment on the pleadings.

prompt correction measures within its control" is a viable legal theory for employment discrimination. EEOC, No. 915.002, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms, at 2260 (1997) [*hereinafter* "EEOC Guidance"]; *accord, e.g., Whitaker v. Milwaukee County*, 772 F.3d 802, 812 (7th Cir. 2014); *Bolin v. Gen. Motors, LLC*, No. 16-13686, 2018 WL 2087313, at *2 (E.D. Mich. May 4, 2018).

Mr. McReynolds's Complaint easily clears the "plausible claim for relief" bar. *Iqbal*, 556 U.S. at 679. He alleged that he was almost always assigned to bale paper while his more junior, White colleagues received better jobs. [DN 1 at ¶¶ 17–19, 22–23]. He also alleged that when he left work early, he either had permission to or was not obligated to be at work at all, creating the possible inference that Ahlstrom used his early departures as pretexts to fire him because of his race. [*Id.* at ¶¶ 21, 24–25]. And, importantly, he alleged that he informed People Plus that Ahlstrom racially discriminated against him, but People Plus conducted no investigation. [*Id.* at ¶ 30]; *see* EEOC Guidance at 2260. Mr. McReynolds did all that is required to state a plausible claim for employment discrimination by a staffing agency. *Cf. Keys*, 684 F.3d at 610 (holding that employment-discrimination complaint was sufficient because it "detail[ed] several specific events" where White supervisors treated Black manager differently than White managers).

People Plus argues for judgment on the pleadings primarily by attacking the credibility of Mr. Reynolds's allegations. In its Motion, it incorrectly argues that Mr. McReynolds needed to state a *prima facie* case for employment discrimination in his Complaint; he need not do so until summary judgment. [DN 16-1 at 6–9 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973))]; *see Swierkiewicz*, 534 U.S. at 510 (explaining that *McDonnell Douglas* set "an evidentiary standard" that applies at summary judgment, "not a pleading requirement"); *Keys*, 684

F.3d at 609 (reaffirming *Swierkiewicz*). While People Plus largely abandons that argument in its Reply, it still appears to be arguing as if we are already at the summary-judgment stage. It says that Mr. McReynolds "cannot demonstrate" that he received disparate treatment or that People Plus intended to discriminate against him, that documentary evidence "does not provide any support for [his] version of events," and that he "wants this Court to believe that he diligently attempted to communicate with People Plus" when he actually did not. [DN 16-1 at 8–9; DN 20 at 7–8]. But at this stage, Mr. McReynolds does not have to demonstrate anything. He does not need to provide any evidence supporting his version of events. And the Court is obligated to believe any factual allegations he makes, no matter how unbelievable People Plus thinks they may be. *See Winget*, 510 F.3d at 581. All he must do is allege factual content that creates a plausible claim for relief, and he did so. *See Iqbal*, 556 U.S. at 679.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that People Plus's Motion for Judgment on the Pleadings, [DN 16], is **DENIED**.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

April 24, 2023

cc: Counsel of record