UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:22-CV-00146-GNS-HBB

CADRELL McREYNOLDS                                                                                    PLAINTIFF

v.

AHLSTROM-MUNKSJÖ FILTRATION, LLC et al.                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion for Judgment on the Pleadings (DN 26) by Defendant Ahlstrom-Munksjö Filtration, LLC and Plaintiff's Motion to Ascertain Status (DN 35). The first motion is ripe for adjudication.[1]

**I.       BACKGROUND**

Construing the Complaint's allegations in the proper light, Plaintiff Cadrell McReynolds ("McReynolds"), a Black man, sought employment with Defendant Ahlstrom-Munksjö Filtration, LLC ("Ahlstrom"), which is a filter-paper manufacturer located in Madisonville, Kentucky. (Compl. ¶¶ 4, 11, 15, DN 1). Any person seeking employment with Ahlstrom must be first employed by Defendant People Plus, Inc. ("People Plus"), an employment placement agency. (Compl. ¶¶ 9-10). McReynolds applied to and was hired by People Plus, which performs screening and placement for Ahlstrom. (Compl. ¶¶ 10, 12).

People Plus placed McReynolds with Ahlstrom in October 2021 to perform the duties of a material handler. (Compl. ¶¶ 12, 17). McReynolds' initial assignment was to bale paper. (Compl. ¶ 17). He alleges that this was "the tedious and physical task of putting leftover paper in

---

[1] While Ahlstrom's motion was pending, the case was reassigned pursuant GO 23-06. (Order, DN 29). While the second motion is not yet ripe, it can be resolved without further briefing because it is moot.

1

a baler for destruction." (Compl. ¶ 17). It was considered one of the worst assignments at the facility, but McReynolds recognized that new employees may be assigned such tasks. (Compl. ¶ 18). McReynolds' assignments did not improve over time, so he addressed the matter with his supervisor. (Compl. ¶ 23). McReynolds expressed interest in performing other assignments and offered to receive training for other tasks. (Compl. ¶ 23). McReynolds alleges that other White coworkers were treated better because they were allowed to progress to better jobs—even coworkers placed after McReynolds—while he continued to be assigned the task of baling paper. (Compl. ¶ 19).

At one point while working at the Ahlstrom facility, McReynolds was temporarily placed on a different shift. (Compl. ¶ 20). While on that shift, McReynolds was permitted to perform other tasks. (Compl. ¶ 20). On a day off, McReynolds came into work to receive training for that temporary shift, but he apparently left without informing his supervisor. (Compl. ¶ 20). When McReynolds arrived for his normal shift, his supervisor confronted him about leaving early without permission notwithstanding McReynolds voluntarily being at work for the training. (Compl. ¶ 21). By the following week, a new, White employee was working on McReynolds' shift, and while that new employee was not required to perform any baling work, McReynolds continued to be assigned that task as his primary assignment. (Compl. ¶ 22).

Another dispute arose regarding McReynolds' shift on December 18, 2021. (Compl. ¶ 24). McReynolds asserts that he arrived early for his shift and promptly informed his supervisor of the need to leave his shift early at midnight. (Compl. ¶ 24). Because his supervisor had already left when McReynolds left his shift that night, McReynolds notified the operator of his departure. (Compl. ¶ 25). McReynolds was subsequently berated by his supervisor for leaving early without permission. (Compl. ¶ 25).

Approximately two weeks later, McReynolds was off work and out of the country on a pre-approved mission trip. (Compl. ¶¶ 26-28). When People Plus notified McReynolds of his termination due to the two incidents of leaving work early, he conveyed information about the disparate and discriminatory treatment at the Ahlstrom facility and how new, White employees were treated differently. (Compl. ¶¶ 29-30). McReynolds contends that his complaints were not investigated and that no one contacted him after raising those complaints. (Compl. ¶ 30).

After filing charges against Ahlstrom and People Plus and receiving right-to-sue letters from the Equal Employment Opportunity Commission, McReynolds filed this action. (Compl. ¶¶ 7-8; Compl. Ex. A, DN 1-2; Compl. Ex. B, DN 1-3; Compl. Ex. C, DN 1-4; Compl. Ex. D, DN 1-5). He asserts claims for violations of Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act. (Compl. ¶¶ 33-42). People Plus moved for judgment on the pleadings, which this Court denied. (Def.'s Mot. J. Pleadings, DN 16; Mem. Op. & Order 8, DN 27). In the present motion, Ahlstrom also seeks judgment on the pleadings. (Def.'s Mot. J. Pleadings, DN 26).

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331. In addition, the Court has supplemental jurisdiction over McReynolds' state law claim. *See* 28 U.S.C. § 1367(a).

## III. STANDARD OF REVIEW

Fed. R. Civ. P. 12(c) allows motions for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). Rule 12(c) motions are analyzed under the same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation

omitted). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (citation omitted). Courts need not, however, "accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citation omitted). A Fed. R. Civ. P. 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Winget*, 510 F.3d at 582 (citing *Paskvan v. City of Cleveland Civ. Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

## IV. DISCUSSION

### A. Defendant's Motion for Judgment on Pleadings

In seeking dismissal of McReynolds' claims, Ahlstrom raises three arguments: (i) the allegations fail to show discriminatory intent; (ii) Ahlstrom had legitimate, non-discriminatory reasons for its termination of his assignment; and (iii) there are insufficient allegations of pretext. (Def.'s Mem. Supp. Mot. J. Pleadings 5-11, DN 26-1). Ahlstrom's arguments, however, are effectively the same grounds which were rejected for People Plus' motion. (Def.'s Mem. Supp. Mot. J. Pleadings 5-11, DN 16-1).

As this Court noted in denying People Plus' motion:

[The] Complaint easily clears the "plausible claim for relief" bar. He alleged that he was almost always assigned to bale paper while his more junior, White colleagues received better jobs. He also alleged that when he left work early, he either had permission to or was not obligated to be at work at all, creating the possible inference that Ahlstrom used his early departures as pretexts to fire him because of his race. And, importantly, he alleged that he informed People Plus that Ahlstrom racially discriminated against him, but People Plus conducted no investigation. Mr. McReynolds did all that is required to state a plausible claim for employment discrimination by a staffing agency.

4

(Mem. Op. & Order 7 (internal citations omitted)). As this Court further explained in rejecting the argument as to the lack of alleged intent:

> [A]t this stage, Mr. McReynolds does not have to demonstrate anything. He does not need to provide any evidence supporting his version of events. And the Court is obligated to believe any factual allegations he makes, no matter how unbelievable People Plus thinks they may be. *See Winget*, 510 F.3d at 581. All he must do is allege factual content that creates a plausible claim for relief, and he did so.

(Mem. Op. & Order 8 (quoting *Ashcroft v. Iqbal*, 556 U.S 662, 679 (2009))). For the same reasons the Court denied People Plus' motion, Ahlstrom's motion lacks merit. Because Ahlstrom has failed to show that it is entitled judgment on the pleadings, its motion is denied.

### B. Plaintiff's Motion to Ascertain Status

While Ahlstrom's motion was pending and after this matter had been reassigned, McReynolds moved to ascertain the status of that motion. Because this Memorandum Opinion and Order addresses Ahlstrom's motion, McReynolds' motion is denied as moot.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that

1. Defendant's Motion for Judgment on the Pleadings (DN 26) is **DENIED**.
2. Plaintiff's Motion to Ascertain Status (DN 35) is **DENIED AS MOOT**.

Greg N. Stivers, Chief Judge
United States District Court

January 29, 2024

cc: counsel of record